# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SECURITY USA SERVICES, LLC,

    Plaintiff,

    v.                                                          No. 1:20-cv-01100 KWR-KRS

INVARIANT CORP., and
HYPERION TECHNOLOGY GROUP, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion for Preliminary Injunction **(Doc. 7)**, Plaintiff's Motion to Strike Affirmative Defenses **(Doc. 26),** Plaintiff's Motion to Dismiss Counterclaims **(Doc. 27),** and Defendants' Motion to Strike Replies **(Doc. 41).** Having reviewed the parties' pleadings and the applicable law, the Court rules as follows:

- Plaintiff's Motion for Preliminary Injunction **(Doc. 7)** is **DENIED**;
- Plaintiff's Motion to Strike Affirmative Defenses **(Doc. 26)** is **DENIED**;
- Plaintiff's Motion to Dismiss Counterclaims **(Doc. 27)** is **DENIED**; and
- Defendants' Motion to Strike Replies **(Doc. 41)** is **DENIED AS MOOT**.

## BACKGROUND

This case is a trademark dispute over threat or gunshot detection systems. Both sides market and sell threat detection systems under the "FIREFLY" mark. Plaintiff registered the mark in 2017, but Defendants assert they continuously used the FIREFLY mark in commerce first.

Plaintiff seeks a preliminary injunction to enjoin Defendants from infringing its registered trademark Firefly. Plaintiff's first three claims arise under the federal trademark statute, the Lanham Act, 15 U.S.C. § 1114(1) (federal trademark infringement); 15 U.S.C. § 1125(a) (federal

unfair competition); and 15 U.S.C. § 1125(c) (dilution under federal law). Plaintiff asserts other claims, but only appears to seek a preliminary injunction as to the trademark infringement claim. *See* **Doc. 8 at 4.**

Defendant filed affirmative defenses and counterclaims, asserting that they are the true owners of the mark based on prior and continuous use going back to 2011.

Neither party requested a hearing. They also did not indicate what additional evidence they would present at a hearing. Rather, they attached evidence, including affidavits, to their pleadings. The Court therefore concludes that a hearing is not necessary.

## DISCUSSION

I. **Plaintiff's Motion for Preliminary Injunction is Denied.**

Plaintiff requests that the Court issue a preliminary injunction prohibiting Defendants from using the FIREFLY mark. Plaintiff asserts that it registered the mark in 2017. Defendants argue that they used the mark before Plaintiff registered its mark.

For the reasons stated below, the Court finds that Plaintiff has failed on each preliminary injunction factor and will therefore deny Plaintiff's motion.

    A. **Relevant Legal Standard for Preliminary Injunctions.**

The purpose of preliminary injunctive relief is to "preserve the relative positions of the parties" until a hearing or trial on the merits can be held. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." *Keirnan v. Utah Transit Auth.*, 339 F.3d 1217, 1220 (10th Cir. 2003) (quotation marks and citation omitted). "A preliminary injunction is an extraordinary remedy, the exception rather than the rule." *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019) (quoting *Free the Nipple–Fort Collins v. City of*

*Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019)). "[B]ecause a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir.2012) (citations omitted).

To obtain a preliminary injunction or temporary restraining order, Plaintiff must show: "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; *and* (4) that the injunction, if issued, will not adversely affect the public interest." *Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Courts disfavor preliminary injunctions that "exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Mrs. Fields Franchising, LLC*, 941 F.3d at 1232. If a motion for preliminary injunction exhibits one of these three characteristics, the Plaintiff faces "a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors." *Id.* The movant must make a strong showing that these factors tilt in its favor. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019)

Here, Defendants argue that a heightened burden applies because Plaintiff appears to seek a change to the status quo. The Court agrees. Defendants have marketed for sale their gunshot detection system under the FIREFLY name since 2011, **Doc. 18 at 2 ¶8**, and an order prohibiting them from continuing to use this mark would clearly change the status quo. Therefore, Plaintiff must satisfy a heightened burden on the likelihood of success factors and balance of harm factors.

3

**B.     Plaintiff has not made a strong showing that it is substantially likely to succeed on its claims.**

Because a heightened burden applies here, Plaintiff must make a strong showing that it is likely to succeed on the merits. Generally, Plaintiff bears the burden to show a substantial likelihood of success on the merits, but "the burdens at the preliminary injunction stage track the burdens at trial." *Harmon v. City of Norman, Oklahoma*, 981 F.3d 1141, 1147 (10th Cir. 2020).

Plaintiff asserts that Defendants committed trademark infringement under sections 32 and 43 of the Lanham Act. "The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used "an identical or similar mark" in commerce, and (3) that the defendant's use is likely to confuse consumers. An infringement claim under § 32 has nearly identical elements, except that the registration of a mark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce, *see* 15 U.S.C. § 1115(a) (2002)." *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1238 (10th Cir. 2013) (internal citations omitted). It appears the first element is at issue here.

Plaintiff asserts that it first used the FIRELFLY in commerce by marketing it in October 2014 and obtained a registered trademark in November 7, 2017. Registration of a trademark would generally provide *prima facie* evidence of the mark's validity and the Plaintiff's exclusive right to use the mark in commerce. 15 U.S.C. § 1115(a). However, the Lanham act does not abrogate common law rights to a mark. *Id.* The Lanham act also carves out an exception for a party's continuous prior use of a mark in commerce. 15 U.S.C. § 1115(b)(5).

Trademark rights are "determined by the date of the mark's first use in commerce," and "[t]he party who first uses a mark in commerce is said to have priority over other users." *Hana Fin. v. Hana Bank*, 574 U.S. 418, 419 (2015).

> It is a bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market. To that end, registration itself establishes only a rebuttable presumption of use as of the filing date. A trademark application is always subject to previously established common law trademark rights of another party.

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (internal citations and quotations omitted). Moreover, under 15 U.S.C. § 1115(b)(5), a party may rebut the presumption of use given to the holder of a federally-recognized mark by proving that the mark "was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to ... the registration of the mark."

Actual use of a mark consists of "attempt[s] to complete genuine commercial transactions." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1053–54 (10th Cir. 2021). However, "[n]o genuine transaction is required to acquire a protectable interest in the mark." *Id.* "[P]romotional efforts for the goods or services at issue such as advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications" may be sufficient to establish a protectable interest. *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1054 (10th Cir. 2021). The parties appear to agree that marketing in commerce without sales is sufficient to establish common law rights based on use. *See* **doc. 28 at 6** (plaintiff "established common law rights to the use of FIREFLY as early as October 2014 when it began marketing its gunshot detection system in New Mexico and through the United States in interstate commerce."). The Court will assume the same for this motion.

The parties have not identified whether the FIREFLY trademark is a goods or services mark. Because the record reflects that the parties supply both goods and services under the FIREFLY mark, the Court will assume the mark is both a goods and services mark. *See, e.g.,* **Doc. 8 at 1-2** ("The public associates Security USA products and *services* with the FIREFLY mark") (emphasis added).

Here, based on the record before the Court, the Court finds that Defendants continuously used the mark in nationwide commerce prior to Plaintiff's use or registration of the mark, and there is nothing in the record to suggest Defendants used the mark with prior knowledge of Plaintiff's use or registration. The Court explains as follows.

The United States military contracted and paid for Defendants to test FIREFLY at the Yuma proving ground in Arizona in August 2011. **Doc. 18 at ¶ 6.** This was a pre-purchase demonstration. FIREFLY was subsequently completed later that year. *Id.* **at ¶ 8.** In December 2011 and December 2012, Defendants offered the FIREFLY system for sale at the American Geophysical Union in San Francisco, an annual meeting consisting of 62,000 members from 144 countries. FIREFLY was on display and Defendants spoke with prospective purchasers who were interested in purchasing FIREFLY. *Id.* **at ¶ 8.** In December 2012 Defendants passed out marketing brochures at that conference which referred to the system as the FIREFLY Threat Detection System. *Id*. Defendants offered the FIREFLY system for sale at those conferences. *Id*.

In January 2012, Defendants were contracted to demonstrate FIREFLY at a shot detection event in New Mexico. At this event, the FIREFLY system was demonstrated to military purchasers. *Id.* **at ¶ 9.**

Defendants first sold the FIREFLY system in March 2012. In February 2012, Defendant sent a proposal for four prototypes of FIFRELY to L-3 Services, a military contractor. The price proposal used the FIREFLY trademark and offered the system for sale. In March 2012 the contractor sent a purchase order for four FIREFLY systems with shipping cases and user/operating manuals. These had the FIREFLY mark on them. *Id.* at **¶ 10-11.** The sensor components did not have the FIREFLY mark on them because they were intended for combat use and the military did not want it identified by enemy combatants. *Id.* **at ¶ 12.** However, the shipping cases, the

user/operator manual, and the circuit boards inside the FIREFLY sensor were labeled with the FIREFLY trademark. *Id.* **at ¶ 12.**

In August 2012, Defendants attended the Space and Missile Defense Symposium in Alabama, an annual trade show. The meeting was widely attended by purchasers from the United States and around the world. Defendants attended the symposium to offer FIREFLY for sale and distributed marketing brochures which referred to the system as the FIREFLY Threat Detection System. *Id.* **at ¶ 15.** This conference was attended by citizens of 46 states and included 17 attendees from New Mexico. **Doc. 19 at ¶ 9.**

In December 2012, Defendants attended a meeting of the American Geophysical Union in San Francisco where the FIREFLY system was offered for sale. The meeting included 24,000 attendees. Defendants handed out FIREFLY marketing brochures and talked with prospective customers. **Doc. 18. at ¶ 20.**

The military paid Defendants to demonstrate to potential buyers the shot detection system at additional events in Virginia, New Mexico, California, and Montana. *Id.* **at ¶ 22-24.** Three of these were in 2013. *Id.*

In May 2014, Defendants attended the Department of Defense Lab Day. Representatives of civilian, military, commercial, and industrial entities attended. Defendants offered the FIREFLY system for sale, passed out FIREFLY brochures to prospective customers. *Id.* **at ¶ 25.**

The FIREFLY system and Defendants' services were bought by the ATF and local law enforcement agencies and deployed several times between 2015 and 2020. *Id.* **at ¶ 26-28.** Defendants have offered FIREFLY for sale directly to police departments and multiple units were sold.

In March 2013, Defendant sold eight units to the military contractor Wintec, Inc. The purchaser was in Florida and the units were shipped to Alabama. *Id.* **at ¶ 16.** Since 2014, Defendant sold FIREFLY to the military through military contractors in Virginia, Arizona, and Mississippi. The FIREFLY trademark was affixed to the shipping containers, circuit boards, and training and user manuals. *Id.* **at 18-19.**

Although Defendants' FIREFLY threat detection system is a highly specialized and niche product, Plaintiffs have continuously sold and marketed the threat detection system under the FIREFLY trademark on a nationwide basis since 2011. *Id.* **at ¶ 14.**

The Court finds that this record shows that Defendants continuously used the FIREFLY mark in nationwide commerce prior to Plaintiff's use of the FIREFLY trademark in commerce. Therefore, the Court concludes that Plaintiff has not made a strong showing that it is substantially likely to succeed on the trademark claims.

Plaintiff appears to suggest that sales to military contractors or the United States military are insufficient to establish prior use in commerce. **Doc. 8 at 6.** Plaintiff does not cite to law stating that sales to military contractors, the US Military and municipalities may not constitute a bone fide use of a mark in commerce. *See Automedx, Inc., v. Artivent Corp.*, 95 USPO2d 1976, 1981-1982 (TTAB 2010) (finding test sales of ventilators to US military constituted bona fide use of mark in commerce). It appears that sales to military contractors or the US military can constitute commercial sales establishing a prior trademark use. *Id.* (prior user blocked registration where only sales establishing priority where sales of tests units to military); *see also FN Herstal SA v. Clyde Armory, Inc.*, 838 F.3d 1071, 1194 (11th Cir. 2016) ("sales of SCAR rifles to USSOCOM alone are sufficient to establish [plaintiff's] priority of use as early as 2004").

8

## C. Irreparable Harm.

Alternatively, even if Plaintiff had made a strong showing that it was likely to succeed on the merits, it has not made a showing of irreparable harm.

To obtain a preliminary injunction, a movant "must establish ... that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "[C]ourts have consistently noted that because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered. Demonstrating irreparable harm is not an easy burden to fulfill." *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (internal citations and quotation marks omitted).

"[P]laintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal quotation omitted). Harm must not be speculative, rather Plaintiff bears the burden of showing a significant risk of harm. *Id.* That harm "must be both certain and great," not "merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001), *quoted in State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021).

In its motion, Plaintiff focuses on a presumption of irreparable harm, but has not set out why Plaintiff would be irreparably harmed by the injunction, or why money damages would not be adequate. The Court may not presume irreparable harm in a trademark case. *See, e.g., Herb Reed Enters., LLC. v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("[t]he *Ebay* Principle – that a plaintiff must establish irreparable harm – applies to a preliminary injunction in

a trademark infringement case."); *Ferring Pharms., Inc.. v. Watson Pharms., Inc.*, 765 f.3d 205, 216 (3d Cir. 2014) ("we hold that there is no presumption of irreparable harm afforded to parties seeking injunctive relief in Lanham Act cases"). Plaintiff asserts that there has already been confusion over the mark. Defendants have presented evidence that they have used the mark since 2011, several years before Plaintiff began using the mark. The Court concludes that Plaintiff has not shown irreparable harm.

      **D.**      **Balance of Harms.**

The Court must next consider whether Plaintiff's "threatened injury outweighs the injury the opposing party will suffer under the injunction…" or whether "the balance of equities tips in [Plaintiff's] favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 889 (10th Cir. 2013) (internal citations and quotation marks omitted).

Here, Plaintiff has not made a strong showing that the threatened injury to it outweighs the injury Defendants will suffer under an injunction. Although Plaintiff obtained a registered trademark in 2014, Defendants have been using the FIREFLY trademark continuously since 2011 and may have common law rights in its use. The balance of equities does not tip in Plaintiff's favor.

      **E.**      **Issuance of Injunction is not in public's interest.**

For the reasons stated above, the Court does not believe it would be in the public's interest to prohibit an apparent senior user from using the FIREFLY mark.

**II.**      **Plaintiff's Motion to Strike Affirmative Defenses is DENIED.**

Plaintiff seeks to strike Defendants' affirmative defenses. Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading an insufficient defense." Fed.R.Civ.P. 12(f). However, motions to strike affirmative defenses are generally disfavored. *See Friends of Santa Fe*

*County v. LAC Minerals, Inc.,* 892 F.Supp. 1333, 1343 (D.N.M.1995) (citations omitted). To strike a defense, its legal insufficiency must be "clearly apparent." *Id.* (same). A court "must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." *Id.* (same). In deciding a motion to strike, the court bears in mind the purpose of pleading an affirmative defense: to provide the plaintiff with fair notice. *Falley v. Friends Univ.,* 787 F.Supp.2d 1255, 1257 (D.Kan.2011). The decision to strike an affirmative defense rests within the sound discretion of the district court. *Hayne v. Green Ford Sales, Inc.,* 263 F.R.D. 647, 650 (D.Kan.2009). Rule 12(f) is intended to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial. *Hayne,* 263 F.R.D. at 648–49.

A defendant is only required to articulate defenses "in short and plain terms." Fed. R. Civ. P. 8(b)(1)(A). Rule 8 generally does not require Defendants to support affirmative defenses with factual allegations. *Lane v.* Page, 272 F.R.D. 581, 593 (D.N.M. 2011). The Court finds that Defendants' pleadings satisfy Rule 8.

To the extent Rule 9(b) applies to an affirmative defense of fraud, Defendants have adequately set forth facts. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Defendants adequately supported its affirmative defense of fraud with facts. *See* **Doc. 16, Counterclaims, at 18-20, ¶¶ 55-67.**

Moreover, the Court does not believe that the affirmative defenses will cause Plaintiff prejudice. The requirement to litigate affirmative defenses in this case does not constitute prejudice that merits striking the defenses under Fed. R. Civ. P. 12(f).

Finally, affirmative defenses may be pled in the alternative and may contradict one another. Fed. R. Civ. P. 8(d)(3).

### III. Plaintiff's Motion to Dismiss Counterclaims is DENIED.

Plaintiff moves to dismiss Defendants' counterclaims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For largely the same reasons as stated in Section I above, Plaintiff's motion to dismiss is not well-taken and denied. Defendants have plausibly alleged facts of sales and other trademark use that plausibly support their claim to senior use of the FIREFLY trademark.

Plaintiff argues that sales to military contractors or the military does not count as prior use in commerce. Plaintiff does not provide any support for this argument in its motion. As explained above, sales to private companies for resale to the United States military may constitute prior use of a mark in commerce. *See, e.g., FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1075 (11th Cir. 2016); *Automed, Inc. v. Artivent Corporation,* 95 U.S.P.O 2d 1976, 1981-82 (TTAB 2010). Defendants allege that they sold their threat detection system under the FIREFLY mark to a private company, L-3 Services, which presumably later resold it to the military. Defendants also promoted its FIREFLY detection system for sale to civilians during this time. As noted above, actual sales are not required to establish priority to a mark. *See* **doc. 30 at 7-9.** The Court finds that Defendants have alleged more than mere "token use" of the FIREFLY trademark.

Plaintiff argues that Defendants' counterclaims should be dismissed because Defendants have not made any sales in New Mexico. Defendants have plausibly alleged that they have engaged in nationwide use of the FIREFLY mark and specifically alleged that they offered their products for sale, demonstrated their products, and marketed their products in New Mexico.

### IV. Defendant's motion to strike Plaintiff's replies is DENIED AS MOOT.

Defendants request that the Court strike Plaintiff's allegedly late-filed replies to its motions to strike affirmative defenses and dismiss counterclaims. Defendants also note that Plaintiff filed its motion to dismiss counterclaims late. Because the Court will deny Plaintiff's motions, the Court will deny Defendants' motion as moot.

Defendants argue that it is not fair that Plaintiff has repeatedly filed its pleadings late while Defendants have stuck to the applicable deadlines. The Court agrees. Plaintiff is warned that it should adhere to the applicable deadlines, or the Court may sanction Plaintiff in the future, including but not limited to denying Plaintiff relief, granting relief against Plaintiff, or entering judgment in Defendants' favor.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (**Doc. 7**) is **DENIED** as described above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Affirmative Defenses (**Doc. 26**) is **DENIED**;

**IT IS FURTHER ORDERED** Plaintiff's Motion to Dismiss Counterclaims (**Doc. 27**) is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Replies (**Doc. 41**) is **DENIED AS MOOT.** The Court has considered Plaintiff's replies.

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**