IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SECURITY USA SERVICES, LLC,

    Plaintiff,

    v.                                                     No. 1:20-cv-01100-KWR-KRS

INVARIANT CORP., and
HYPERION TECHNOLOGY GROUP, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment **(Doc. 61)**, and Plaintiff's Motion to Stay Briefing Deadline to File Response to Defendants' Motion for Summary Judgment Pending Resolution of Discovery Motions **(Doc. 67)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiff's Motion to Stay Briefing deadline is now moot and therefore **DENIED**. Furthermore, the Court finds that Defendants' Motion for Summary Judgment is well taken and therefore is **GRANTED.**

This case is a trademark dispute over threat or gunshot detection systems. Both sides market and sell gunshot detection systems under the "FIREFLY" mark. Plaintiff registered the mark in 2017, but Defendants assert they continuously used the FIREFLY mark in commerce first, as early as 2011. Plaintiff asserted various claims alleging that Defendants infringed on their mark. As explained below, the Court finds that Plaintiff's claims fail. The undisputed summary judgment record reflects that Plaintiff cannot assert priority over Defendants, because Defendants used the FIREFLY mark continuously in commerce before Plaintiff did so.

### BACKGROUND

**I.**    **General Background.**

Plaintiff's first three claims arise under the federal trademark statute, the Lanham Act, 15 U.S.C. § 1114(1) (federal trademark infringement); 15 U.S.C. § 1125(a) (federal unfair competition); and 15 U.S.C. § 1125(c) (dilution under federal law). Plaintiff also asserts claims under New Mexico law, including common law unfair competition and trademark dilution under New Mexico law (NMSA § 57-3B-15). **Doc. 1-1.**

Defendants filed affirmative defenses and counterclaims, asserting that they are the true owners of the mark based on prior and continuous use going back to 2011.

Plaintiff requested that the Court issue a preliminary injunction prohibiting Defendants from using the FIREFLY mark. The Court denied the preliminary injunction motion.

Defendants now move for summary judgment on all of Plaintiff's claims.

## II.   Undisputed Facts.

Initially, the Court notes that Defendants' statement of facts 1-7 are properly supported in the record and not genuinely disputed. Although Plaintiff nominally disputes Defendants' facts, the Court finds that Plaintiff's disputes are not responsive or relevant to Defendants' asserted facts, and therefore Plaintiff does not create genuine disputes as to Defendants' facts 1-7.

In mid-2011, Defendants began jointly developing their gunshot detection system named FIREFLY. The U.S. Army commissioned and paid for a commercial demonstration of FIREFLY in August 2011, in Yuma, Arizona. **Doc. 61 at 3, Undisputed Material Fact ("UMF") 1.** FIREFLY was completed soon after and was put on sale at an international trade show in San Francisco in December 2011. The first four FIREFLY systems were sold in March 2012. *Id.*, **UMF 2.** Since its first sale, FIREFLY has been marketed and sold nationwide. *Id.* **at UMF 3.** Defendants' average sales of FIREFLY products are approximately 19 units per year between the

years 2012 -2021.  *Id.* **at UMF 4.**  For each system sold, the FIREFLY trademark was placed on the system's packaging, handbook, and internal circuitry.  The name is also prominently displayed on marketing material, including Defendant Invariant's website.  *Id.* **at UMF 5.**

Plaintiff first began using the FIREFLY mark in connection with its gunshot detection system on October 1, 2014.  *Id.* **at UMF 6.**  Plaintiff registered the mark on November 7, 2017.  *Id.* **at UMF 7.**

Plaintiff asserts its own separate facts, which the Court generally finds to be irrelevant or unsupported, as explained below.  Even if its additional facts were relevant, the Court finds that Plaintiff's exhibits 1-6, 11, 13, 14, 15, 16, 17[1], 18, and 19[2] should be excluded because they rely upon inadmissible hearsay.

## DISCUSSION

### I. Plaintiff failed to create a genuine dispute of material fact.

Defendants request that the Court enter summary judgment on all of Plaintiff's claims in this case.  Plaintiff asserts trademark infringement claims against Defendants for their use of the FIREFLY trademark in the marketing and sale of their gunshot detection systems.  Plaintiff asserts that it first used the mark in 2014 and registered the mark in 2017.  Defendants argue that they have continuously used the mark in commerce beginning in 2011 and therefore Plaintiff cannot assert priority.

The Court concludes that Defendants have shown they have continuously used the mark in commerce as early as 2011.  Under well-established trademark law, Plaintiff has failed to establish

---

[1] Plaintiff's exhibit 17 contains several news clippings which constitute hearsay.
[2] Most of these exhibits are news articles or Wikipedia articles, which contain two levels of hearsay – the article itself, and the quotations in the article.

3

priority over the FIREFLY mark through prior use, and Plaintiff cannot assert its trademark infringement claims against Defendants.

Plaintiff asserts that Defendants committed trademark infringement under sections 32 and 43 of the Lanham Act.  "The elements of an infringement claim under § 43(a) are (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used "an identical or similar mark" in commerce, and (3) that the defendant's use is likely to confuse consumers. An infringement claim under § 32 has nearly identical elements, except that the registration of a mark serves as prima facie evidence of both the mark's validity and the registrant's exclusive right to use it in commerce, *see* 15 U.S.C. § 1115(a) (2002)." *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1238 (10th Cir. 2013) (internal citations omitted).

Plaintiff asserts that it obtained a registered trademark on November 7, 2017.  Registration of a trademark would generally provide *prima facie* evidence of the mark's validity and the Plaintiff's exclusive right to use the mark in commerce. 15 U.S.C. § 1115(a).  However, the Lanham act does not abrogate common law rights to a mark.  *Id.*  The Lanham act also carves out an exception for a party's continuous prior use of a mark in commerce.  15 U.S.C. § 1115(b)(5).

Trademark rights are "determined by the date of the mark's first use in commerce," and "[t]he party who first uses a mark in commerce is said to have priority over other users." *Hana Fin. v. Hana Bank*, 574 U.S. 418, 419 (2015).

> It is a bedrock principle of trademark law that trademark ownership is not acquired by federal or state registration, but rather from prior appropriation and actual use in the market. To that end, registration itself establishes only a rebuttable presumption of use as of the filing date. A trademark application is always subject to previously established common law trademark rights of another party.

*S.C. Johnson & Son, Inc. v. Nutraceutical Corp.*, 835 F.3d 660, 665 (7th Cir. 2016) (internal citations and quotations omitted).  Moreover, under 15 U.S.C. § 1115(b)(5), a party may rebut the presumption of use given to the holder of a federally recognized mark by proving that the mark

4

"was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to ... the registration of the mark." 15 U.S.C. § 1115(b)(5).

Actual use of a mark consists of "attempt[s] to complete genuine commercial transactions." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1053–54 (10th Cir. 2021). However, "[n]o genuine transaction is required to acquire a protectable interest in the mark." *Id.* "[P]romotional efforts for the goods or services at issue such as advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications" may be sufficient to establish a protectable interest. *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1054 (10th Cir. 2021).

The parties have not identified whether the FIREFLY trademark is a goods or services mark. Because the record reflects that the parties supply both goods and services under the FIREFLY mark, the Court will assume the mark is both a goods and services mark. *See, e.g.,* **Doc. 8 at 1-2** ("The public associates Security USA products and *services* with the FIREFLY mark") (emphasis added).

Here, based on the record before the Court, the Court finds that Defendants continuously used the mark in nationwide commerce prior to Plaintiff's use or registration of the mark, and there is nothing in the record to suggest Defendants used the mark with prior knowledge of Plaintiff's use or registration.

The undisputed facts show that Defendants first used the mark commercially in 2011 by demonstrating the FIREFLY system. Alternatively, Defendants first used the FIRFELY mark in commerce by offering it for sale at the American Geophysical Union Conference in December 2011.

Defendants first sold a FIREFLY unit to L-3 Services, a contractor for the U.S. Army in 2012. Since then, Defendants have sold 170 units from 2012 to 2021, averaging 19 sales in commerce per year between 2012 and 2021. **Doc. 61-1 at 1.** Defendants have advertised the FIREFLY system nationally, including at conferences attended by people from nearly every state. **Doc. 61-2.**

Sales to military contractors, the U.S. military, or municipalities can constitute commercial sales establishing a prior trademark use. *See Automed, Inc., v. Artivent Corp.*, 95 USPO2d 1976, 1981-1982 (TTAB 2010) (finding test sales of ventilators to US military constituted bona fide use of mark in commerce); *see also FN Herstal SA v. Clyde Armory, Inc*., 838 F.3d 1071, 1194 (11th Cir. 2016) ("sales of SCAR rifles to USSOCOM alone are sufficient to establish [plaintiff's] priority of use as early as 2004").

Defendants have shown that they have continuously marketed, advertised, demonstrated, and sold the FIREFLY system nationwide since 2011 or 2012. **Doc. 61, Ex. 1, 2.** In contrast, in its interrogatory response Plaintiff states that it first used the FIREFLY trademark in 2014. **Doc. 61 at 7-8.** Plaintiff registered the mark in 2017. The undisputed facts show that Defendants began using the FIREFLY trademark well before Plaintiff. Therefore, Plaintiff cannot assert priority over Defendants and cannot maintain trademark infringement claims against Defendants.

## II.     Plaintiff's remaining arguments are unavailing.

Plaintiff's remaining arguments do not create a genuine dispute of material fact precluding summary judgment. Plaintiff asserts that it licensed the FIREFLY mark from a third party, Battelle, and can establish priority through Battelle's alleged prior use of the FIREFLY mark in 2008. Plaintiff has failed to show how this alleged prior use by Battelle helps it prosecute its infringement claims against Defendants, as explained below.

Initially, Defendants object to many of Plaintiff's exhibits, asserting that those exhibits contain inadmissible hearsay. The Court agrees in part, and concludes that Plaintiff's exhibits 1-6, 11, 13, 14, 15, 16, 17, 18, and 19 contain inadmissible hearsay.  Notably, many of exhibits are news or Wikipedia articles, which may contain two levels of hearsay. *See, e.g., Taylor v. Thomas*, No. 18-CV-269-GKF-FHM, 2020 WL 2114363, at *4 (N.D. Okla. May 4, 2020) (news articles are hearsay), *citing New England Mut. Life. Ins. Co v.* Anderson, 888 F.2d 646, 650 (10th Cir. 1989).  Alternatively, as explained below, even if the exhibits were admissible, Plaintiff has failed to create genuine disputes of material fact to preclude summary judgment.

Plaintiff asserts that it licensed the FIREFLY mark from Battelle and can establish priority through Battelle's alleged prior use of the FIREFLY mark in 2008.  The Court finds that Plaintiff has not established in the summary judgment record, through admissible evidence that Battelle continuously used the FIREFLY mark in commerce since 2008 or is the owner of the FIREFLY mark.  Therefore, Plaintiff has not created a genuine dispute of material fact on this basis.

Moreover, the record reflects that Plaintiff may have licensed certain technology from Battelle but the record does not reflect that Plaintiff licensed the trademark "FIREFLY" from Battelle.  Plaintiff provided an agreement between it and Battelle as proof of a trademark license. That agreement was titled "Agreement for DOE-Funded Technology Assistance" and provided that the following technology assistance would be provided: "provide technical advice regarding the feasibility of integrating technical features suggested by Security USA into the licensed gunshot detector system to facilitate the implementation of technology." **Doc. 77-22 at 1.**  As Defendants argue, the agreement between Plaintiff and Battelle appears to include a patent license, and expressly provides that Plaintiff "will not use the name or marks of Battelle, PNNL or the U.S. Government…" **Doc. 77-22 at 1.**  The agreement does not mention license of the FIREFLY

7

trademark. Therefore, Plaintiff has not provided anything in the record to suggest that it licenses the FIREFLY mark from Battelle.

Even if Plaintiff had established that Battelle was the owner of the FIREFLY mark and Plaintiff properly licensed the mark from Battelle, Plaintiff is a mere nonexclusive licensee and Plaintiff has not shown that as a nonexclusive licensee it can bring a trademark infringement claim. Plaintiff does not cite to any law for that proposition.

Generally, to enforce another party's prior use rights, a subsequent party, such as Plaintiff must have acquired title to the trademark through a valid assignment. *See* McCarthy on Trademarks 18:15 ("all courts follow the rule that… after a valid assignment, the assignee acquires all of the legal advantages of the mark that the assignor enjoyed, including priority of use." ).

Here, Plaintiff merely asserts that it acquired a license and therefore admits it has no ownership rights in the mark. McCarthy on Trademarks 18:52 ("A licensee's use inures to the benefit of the licensor-owner of the mark and the licensee acquires no ownership rights in the mark itself."); Doc. 77-22 (providing that Plaintiff receives a nonexclusive license). As a nonexclusive licensee, Plaintiff may not rely on the licensor's prior use to establish priority. *Moreno v. Pro Boxing Supplies, Inc.*, 124 U.S.P.Q.2d 1028 (T.T.A.B. 2017) (holding that a licensee could not rely on her licensor's prior trademark use to establish priority).

Notably, Plaintiff's theory that it was a licensee of Battelle's FIREFLY trademark conflicts with its trademark registration application, in which it swore that no one else had a right to use the trademark. **Doc. 86 at 9 n.3,** *citing* Doc. 8 at 19 (claiming ownership of FIREFLY and federal registration); TMEP § 803.01 ("An application to register a mark must be filed by the owner of the mark."). Plaintiff cannot assert that is both a licensee and owner of the FIREFLY mark, and nothing in the record suggests that Plaintiff acquired an exclusive license or ownership of the

FIREFLY mark from Battelle.  *See* **doc. 77-22 at ¶2, 10** (providing that plaintiff is granted a nonexclusive license as to intellectual property).

### III.  Plaintiff's remaining claims also fail.

Plaintiff has also asserted other claims, including federal unfair competition, federal dilution, and similar New Mexico claims.  Defendants argue that these claims fail because Plaintiff has not established priority over the FIREFLY mark, as explained above.  *See* **Doc. 61 at 10** (explaining why remaining claims fail).  In response, Plaintiff does not address these arguments or explain why summary judgment should not be granted as to these other claims.  *See* **Doc. 77.**  The Court finds Defendants' arguments well taken, and therefore Plaintiff's remaining claims are also be dismissed.

### IV.  Motion to stay briefing pending discovery ruling is denied as moot.

Plaintiff requested that the Court stay the summary judgment briefing pending a ruling on a motion to compel discovery before Judge Sweazea.  *See* **Doc. 67** (motion to stay).  The request to stay briefing is now moot, as Judge Sweazea denied the motion to compel and Plaintiff filed its response to the motion for summary judgment.  Alternatively, in its motion to stay briefing Plaintiff did not make a sufficient showing under the Rule 56(d) standard to defer summary judgment pending discovery.  *See* **Doc. 67.**  Although Plaintiff addressed Rule 56(d) in its reply brief, a party must generally make this showing in the motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (**Doc. 61**) is **GRANTED.**  Plaintiff's claims are **DISMISSED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay Briefing Deadline to File Response to Defendants' Motion for Summary Judgment, pending resolution of Discovery Motions is **DENIED AS MOOT (Doc. 67).**

9

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS
UNITED STATES DISTRICT JUDGE**